## FIRST NAT. BANK IN WELLINGTON v. DUNCAN et al.

No. 25527.   May 26, 1936.

Frank Petree, for plaintiff in error.

Robinson & Oden, for defendants in error Duncan.

PER CURIAM. This is an appeal from the district court of Jackson county. The parties to this appeal appear here as in the court below, and will be so referred to herein.

On September 1, 1930, J. M. Bush owned a certain tract of land in Jackson county, Okla., and on this date sold the land to W. Doyle. On the same day W. Doyle and his wife, Katie Doyle, executed and delivered to the defendants Duncan and Duncan their note in the sum of $3,566, secured by a mortgage on the land purchased from Bush. This mortgage constituted a first and prior lien on the land.

On the same day the Doyles executed and delivered to Bush two notes, one for $500 due December 1, 1930, the other for $750 due December 1, 1931. These notes were secured by a second mortgage on the land involved in this action. This second mortgage was recorded.

Bush thereafter sold, transferred, and assigned the $750 note to plaintiff, the first National Bank in Wellington, Tex. No assignment of the second mortgage was taken by the bank, or if so, it was not recorded.

The undisputed evidence discloses that Doyle defaulted in payment of the first mortgage to Duncan and Duncan.

An agreement was reached whereby, in order to avoid necessity and expense of foreclosure proceedings on the first mortgage, the Duncans would take the land in settlement of their mortgage, and Bush would execute a release of his second mortgage, in consideration of an option from the Duncans to repurchase the land. Pursuant to this agreement, the Doyles executed a deed to the land to L. H. Duncan in trust for defendants. L. H. Duncan executed an option to Bush giving him the right to repurchase the land any time before January 1, 1933, for the amount of indebtedness due the Duncans under their mortgage. The deed from the Doyles to Duncan and the option were placed with Robinson & Oden, attorneys, with instructions to deliver the option to Bush upon his execution of a release of his second mortgage, and when this was done, to accept the Doyle deed for Duncan, and to return to the Doyles the notes secured by the first mortgage. Bush released his second mortgage and accepted the option. The Duncans accepted the deed and returned their notes to the Doyles. They relied upon the record showing Bush to be the owner of the second mortgage.

December 17, 1932, after completion of the agreements of the Duncans, Doyles and Bush, plaintiff filed this action to recover judgment against W. Doyle and Katie Doyle on the $750 note, secured by the second mortgage on the land, and to cancel the release of mortgage executed by Bush, and for judgment foreclosing said mortgage, and a further judgment barring and foreclosing any right or interest of the Duncans in said land.

In their answer, the Duncans offered to deed the land to plaintiff upon payment to them of the amount due under their first mortgage. Again during the trial defendants offered to deed the land to plaintiff upon payment of the amount for which they took it in settlement without interest. These offers were not accepted.

In their answer, the defendants Duncan and Duncan ask that the mortgage sued upon by plaintiff be held to constitute no further lien against said premises; that the release given by Bush be decreed valid, but in the event the court should find that plaintiff is entitled to a cancellation of the release given by Bush, that defendants' mortgage be reinstated, and in such event the release of said mortgage be canceled, and for judgment giving them a first and prior lien on said premises for the amount secured by their mortgage.

The trial court rendered judgment in fa-

vor of plaintiff and against the defendants W. Doyle and Katie Doyle for personal judgment in the sum of $750, interest and attorney fees, and rendered further judgment in favor of the defendants Duncan denying cancellation of the mortgage release executed by J. M. Bush, denying foreclosure of the second mortgage and quieting title in the defendants L. H. Duncan and Blanche Duncan to the lands involved in this action.

Plaintiff first urges for reversal of this judgment that the defendants Duncan and Duncan are not innocent purchasers of the land for value without notice, and entitled to protection as such against plaintiff's claim.

Were the defendants Duncan and Duncan innocent purchasers of said real estate for value without notice?

The answer to this question largely determines this case. It is conceded by all parties that plaintiff did not take an assignment of the Bush mortgage, or at least did not file such assignment of record, but plaintiff urges that transfer of the $750 note carried with it the security, and created an equitable assignment of the mortgage securing said note, and therefore plaintiff was entitled to cancel the release of said mortgage by the record holder, and to sue and foreclose said mortgage.

The principle of law advocated by plaintiff applies only to the original parties to the transaction, or to third parties having notice about which there can be no dispute. Shawnee State Bank v. Hoge, 131 Okla. 9, 267 P. 483. Duncan and Duncan were not original parties to the transaction. They originally had no interest in the second mortgage. It is apparent from the record at the time Bush released his second mortgage, he was convinced that an equity remained in the land above the first mortgage. It is likewise apparent at the time of trial, plaintiff, by rejection of the offer twice made by defendants Duncan to accept the land for the amount of the first mortgage, believed that after this mortgage was paid no equity remained to the holder of the second mortgage.

Duncan and Duncan acquired this land for a valuable consideration. Bush received a valuable consideration for the release of his mortgage, to wit, an option to purchase the land from Duncans by paying their mortgage. The Duncans were not third parties having notice of the transfer of the note to plaintiff bank by Bush. These defendants relied upon the record showing Bush to be the owner of the mortgage. They parted with their notes to the Doyles.

It is evident the trial court, in the rendition of judgment in this case, found all of these facts to be true. No other conclusion can be drawn from the record.

By a simple act of precaution in taking and recording an assignment of the Bush mortgage, plaintiff could have protected itself. Even so, the Duncans would have sold the land under their first mortgage, and plaintiff, as is apparent, would have had no equity remaining in the premises.

In the face of these facts, plaintiff urges that the trial court, sitting as a court of equity, erred in failing to find that Duncan and Duncan were not innocent purchasers of the land, and in failing to cancel the release of the Bush mortgage, in failing to foreclose the lien of plaintiff in the property, and in failing to render a judgment barring the defendants Duncan from any right, title, or interest in the land.

The record shows no fraud upon the part of the defendants. In fact it shows Duncan and Duncan acted with utmost good faith in all matters pertaining to the land.

Considering the facts in this case, is the innocent purchaser rule urged by plaintiff applicable here, and is it binding upon the defendants Duncan and Duncan?

Sections 9672 and 9673, O. S. 1931, provide:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided."

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors."

In Chase v. Commerce Trust Company, 101 Okla. 182, 224 P. 148, this court held:

"Sections 5251, 5252, Comp. Stat. 1921, are sufficiently comprehensive to include assignments of real estate mortgages, and such assignments must be recorded to charge subsequent purchasers or incumbrancers with constructive notice thereof.

"The recording of an assignment of a mortgage covering real estate is necessary in order to protect the assignee thereof against a subsequent fraudulent discharge of record by the mortgagee, should the property thereafter pass into the hands of a bona fide purchaser relying upon such recorded discharge."

The recording act of this state not only permits, but requires, the recording of assignments of mortgages, in order to charge subsequent purchasers or incumbrancers with constructive notice thereof. This act is controlling here.

It was necessary for plaintiff to place its assignment of record, if it desired to protect itself against the fraudulent discharge of the mortgage by the record holder. It is clear from the record that the Duncans were not parties to the fraudulent discharge of this mortgage. The note sued upon by plaintiff matured December 1, 1931. The Duncans, Doyles, and Bush transactions were not had until August 12, 1932, during all of which time the mortgage securing plaintiff's note remained of record in the name of J. M. Bush. It is thus established that the negligence of plaintiff in failing to take and record an assignment of the mortgage is responsible for any damage which may have been suffered in this case. The rule is universal, as between two innocent parties, that the one who made the damage possible must suffer.

There was no way whereby Duncan and Duncan could be advised that plaintiff was the holder of said note, the record being silent.

Plaintiff insists that the Duncans should, at the time of the release, have inquired with reference to, and demanded the $750 note. Assuming such inquiry had been made, is it not probable Bush would have made some logical explanation for failure to produce it?

Plaintiff was a banking institution experienced in the handling of notes, mortgages, and assignments, and should have filed an assignment of this mortgage. Ordinary business prudence demanded such requirement.

The facts show that Duncan and Duncan were innocent purchasers for value without notice, and are entitled to protection as such against plaintiff's claim.

Such conclusion was evidently reached by the trial court.

The case of Shawnee State Bank v. Hoge, 131 Okla. 9, 267 P. 481, adversely answers all the contentions made by plaintiff. In the Shawnee State Bank Case, supra, like the case at bar, no contention was made that defendants had actual notice of plaintiff's claim, but there the plaintiff also contended that the defendant knew, or could have known by the exercise of reasonable diligence, the notes were outstanding, and before accepting as final or conclusive a release from the mortgagee, he should have required the notes to be produced. From an examination of this decision and many others, we cannot agree that such duty rested on the defendants Duncan.

The case of Lewis v. Kirk, 28 Kan. 497, 42 Am. Rep. 173, states the correct rule of law applicable herein, as follows:

"After a careful consideration of the authorities and the statutes of this state, we have come to this conclusion: Where a real estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of the negotiable character of the note that whenever the note is transferred by indorsement before due so as to free it from all equities existing in favor of the maker of the note, or prior indorsers, the mortgage will also be freed from such equities. But until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded, its negotiable character is then extended even to bona fide purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative; and that when the mortgage is so released it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith will obtain the full, complete and absolute title thereto, freed from all equities, liens, interests, trusts or incumbrances existing in favor of any holder of the note and mortgage, whether the note is satisfied or not."

The second mortgage standing on the record in the name of J. M. Bush properly demanded that a written release of the same be procured from him and placed of record before Duncan and Duncan would release their mortgage.

All of the parties to the original transaction having acknowledged in writing full and complete satisfaction of the indebtedness and the mortgage securing the $750 note

being released of record by the on'y person shown by the record to have any right to release it, of whom could the defendants make further inquiry, in the absence of any information of any claims of third parties, which it is not contended they had?

It appears from the record that a fraud was perpetrated on the plaintiff bank, but defendants Duncan were not in any way a party to it, and the same was made possible by the failure of the bank to procure and place of record an assignment of the mortgage at the time it procured the note. It is clear from the record in this case, that Duncan and Duncan were bona fide purchasers of the property, and the burden would be upon the plaintiff to show such a state of facts as to put these defendants upon inquiry, which burden it has not assumed. To charge the Duncans with constructive notice of the fact that the $750 note had been assigned to plaintiff bank and was not paid would be inconsistent with the purpose of the recording laws of this state, with settled principles of equity, and with the convenient transaction of business. Williams v. Jackson, 107 U. S. 478, 2 S. Ct. 814, 27 L. Ed. 529.

This is an equitable action to cancel a release of, and for foreclosure of a mortgage, hence plaintiff, before it would be entitled to any relief, must offer to do equity. This rule of law is so well established it is unnecessary to cite authorities. In this case, plaintiff negligently failed to take an assignment of the mortgage, or if it had one, to record the same, and relies wholly upon the indorsement of the note as carrying with it a transfer of the mortgage, and since the defendants Duncan and Duncan offered to deed the property in question to plaintiff upon payment of the amount of their claim, even without interest, equity would not permit the plaintiff to take advantage of its own wrong and assert a claim prior and superior to defendants for the amount for which they had a prior lien on the property. All that plaintiff had before the taking of the deed was a second mortgage, and since the defendants offered to turn the property over to plaintiff upon settlement of the amount of their prior claim, it becomes apparent that by the rejection of this offer it was admitted by plaintiff that the property was worth no more than the first mortgage against it.

Plaintiff is entitled to no equitable relief. A reversal of this case would avail it nothing. If the case were reversed, equity would demand the reinstatement of the Duncans'

first mortgage, and foreclosure of the same, and under such foreclosure the equity of the plaintiff would be extinguished by the sale of the land. Plaintiff would be left in the position where it now stands.

The trial court rendered a judgment founded upon logic, common sense, and equity. The judgment is amply supported by the record and the law. It follows that the judgment of the trial court was, and is in all things correct, and the same is hereby affirmed.

The Supreme Court acknowledges the aid of Attorneys L. A. Justus, Jr., Joseph D. Mitchell, and Wm. S. Hamilton in the preparation of this opinion. These attorneys constituted an advisory committee se'ected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Justus and approved by Mr. Mitchell and Mr. Hamilton, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.